# Joseph Beckhaus, Plff. in Err., v. Commercial National Bank of Pennsylvania.

An accommodation note is good as against the maker in the hands of a third person, although it passed to the latter as security for a pre-existing debt, provided, however, that there was no fraud in the procurement of the note.

Even where such a note is procured in bad faith and is passed to a third person for a valuable consideration, the latter may recover from the maker the amount he has actually paid or credited the payee on the faith of the paper.

(Argued January 9, 1888.   Decided January 23, 1888.)

January Term, 1887, No. 349, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.   Error to the Common Pleas No. 2 of Philadelphia County to re-

NOTE.—Section 25 of the act of May 16, 1901, P. L. 194, provides that an antecedent or pre-existing debt shall constitute value. This was true prior to this act, unless the instrument was taken merely as security for such indebtedness, without other consideration. Schaeffer v. Fowler, 111 Pa. 451, 2 Atl. 558; Carpenter v. National Bank, 106 Pa. 170. But if the instrument was an accommodation note, its transfer as security was for value (Appleton v. Donaldson, 3 Pa. St. 381; Lord v. Ocean Bank, 20 Pa. 384, 59 Am. Dec. 728) ; unless the note was fraudulently used or procured. Smith v. Popular Loan & Bldg. Asso. 93 Pa. 19.

As to the rights of a bona fide holder of note, the execution of which was procured by fraud, see editorial note to Green v. Wilkie, 36 L. R. A. 434.

view a judgment·for plaintiff in an action upon a promissory note.   Affirmed.

The facts are substantially as follows:

The bank brought suit, as indorsee against Beckhaus, who was an indorser of a note of which the following is a copy:

$25,000.                     Philadelphia, July 1, 1884.

Three months after date I promise to pay to the order of Joseph Beckhaus, Twenty-Five Thousand Dollars, without defalcation, value received.        (Signed) William Ladner.
(Indorsed) C. T.
Joseph Beckhaus.
Ladner Bros.

On the trial, before MITCHELL, J., it appeared that the indorsement of Beckhaus had been obtained by false representations made by the Ladners as to their financial standing.   Beckhaus also alleged that it was represented to him, as an inducement, that Charles Theis would join him in indorsing the note. His initials were on the note, but he never indorsed it.   It was also alleged that this note had been transferred to the plaintiff as collateral security for an antecedent debt.

Counsel for defendant offered to show defendant's mental and physical condition at the time the note was indorsed.   Objected to as immaterial, inasmuch as it was not sought to prove that he was *non compos mentis.*   Objection sustained.   Exception.   [1]

Counsel for plaintiff requested the court to charge, *inter alia,* as follows:

1. If you find that the note in suit was indorsed by the defendant, and that it was delivered by Ladner to the plaintiff, and that the latter made advances, or gave credit, or cashed checks upon the faith thereof, then to the extent of such advances, or credit, or cashing of checks, the plaintiff is entitled to recover, although Ladner gave no consideration to Beckhaus for such indorsement.

Ans. Affirmed.   [3]

2. No fraud perpetrated by Ladner upon Beckhaus will enable the latter to defend the note in suit, to the extent the bank

made advances, gave credit, or cashed checks upon its pledge, unless the defendant proves notice to, or knowledge by, the bank, of such fraud, prior to such making of advances, giving of credit, or cashing of checks.

*Ans.* Affirmed. [4]

3. If one person makes or indorses a note for the accommodation of another, and delivers the same to such other person for that purpose, it is not a fraud for the latter to subsequently circulate such note, although the person who makes or indorses the same, forbids such circulation.

*Ans.* Affirmed. [5]

4. If Beckhaus indorsed the note in suit, and delivered the same thus indorsed to Ladner, the presumption is that such delivery was to enable some use to be made of such note.

*Ans.* Affirmed. [6]

6. Where a note is made or indorsed for the accommodation of another, a third person who receives the same in good faith and without notice of any fraud is entitled to hold the same as security for an antecedent debt.

*Ans.* Affirmed. [2, 7]

Counsel for defendant requested the court to charge, *inter alia,* as follows:

1. If the jury find from the evidence that the plaintiff holds the note in suit merely as a security for an antecedent debt of the Ladners and that the plaintiff is not a holder of the note in suit for value, the defendant is entitled to set up any defense he has against William Ladner.

*Ans.* Affirmed so far as the defense of fraud is set up in this case. [8]

3. To give the plaintiff a right to recover on the note, the jury must find from the evidence that the bank is a holder for value, and without notice of any defense Beckhaus would have as against Ladner.

*Ans.* Affirmed as regards the defense of fraud. [9]

4. If the jury find from the evidence that the bank only held the note in suit for collection on account of William Ladner, the verdict should be for defendant.

*Ans.* Refused. I think there is no evidence to support it. [10]

The court charged the jury, *inter alia,* as follows:

[If you believe this note was obtained from Beckhaus **by** William Ladner by fraudulent representations, then the plain-tiffs are not entitled to recover upon it, unless they have given value for it; but if they have given value for it, they are en-titled to recover notwithstanding the fraud.]   [11]   In that case it is Mr. Beckhaus's misfortune, and the loss must fall upon him.

As to that, you had several items of misrepresentation which Mr. Beckhaus told you were made by Mr. Ladner, which in-duced him to give this note; that he was unwilling to do it, but he was assured by Mr. Ladner, in the first place, that he would get Mr. Theis's signature to it.   As to that I will say that [**it** does not appear so far as any evidence in this case shows, that Mr. Theis's signature would have done the defendant any good in this case.]   [12]   [This note, you will observe, is a note payable to the order of Joseph Beckhaus, and Mr. Theis could not sign it in any way to make himself responsible to Mr. Beck-haus, the defendant,]   [14] because Mr. Beckhaus must **be** the first indorser, the note being made to his order, and if Mr. Theis had indorsed it afterwards he would have been the sec-ond indorser and Mr. Beckhaus would have been responsible to him, and not he to Mr. Beckhaus.   [If he had signed it before Mr. Beckhaus then it would have been what the law calls an ir-regular indorsement, and without proof of a written collateral contract to make himself responsible, of which there is no evi-dence in this case, he would not have been responsible on that note.]   [13]

There were other matters, the representation that he would not put it in circulation, but wanted to hold it as a mere reserve, and more especially, the representation that they had assets and would be abundantly able to pay the note; and in the language that Mr. Beckhaus himself used, if I recollect correctly, Mr. Ladner told him he need not get it into his head that he would have to pay this note, because they, the Ladners themselves, had plenty of assets to pay; they had $10 for every dollar they owed; that in point of fact, those statements were utterly false, the Ladners were hopelessly insolvent. and Mr. Ladner must have known he would never have the means of paying this note.

The first question really for you to determine is whether or not this note was got from Mr. Beckhaus by fraudulent representa-tions.   I do not suppose really you will have much difficulty in

making up your mind that that was the fact. The evidence seems to me pretty clear; nevertheless, that is a matter for you to decide.    If you find that it was not, if you find that these were merely persuasions, as a man may be persuaded against his own better judgment, or who may be persuaded by his relatives or friends, his son-in-law, as it was in this case, to do something which he knows is imprudent, and he wishes he had not done it, that is not fraud.    If you find that is all that was done in this case, Mr. Beckhaus was persuaded by his son-in-law to sign this note for his accommodation, there is no fraud in it at all.    But if you find it was a fraud, and I think there is not much doubt but that you will, then you consider whether the plaintiff gave value for it; that is, that the plaintiff parted with any money on the faith of this note being in its hands as collaterals.    Upon this the evidence laid before you this morning is that the bank is to-day out 25,300 and odd dollars, by reason of advances made on account of this note, and on the faith of it.    If you find that this is the fact, then it is entitled to recover the amount of the note, $25,000 with interest, although it may have been got from Mr. Beckhaus by fraud.

The defendant has argued to you that this is not really so, and a number of points have been made to lead you to discredit the evidence on behalf of the plaintiff on that point.    Without going over that in detail, for I am sure they must be fresh in your mind, the defendant, through his counsel, has called your attention to the fact that no entry is shown of this note on the books of the bank until August; and therefore he asks you to infer that although it was undoubtedly in Mr. Graham's hands before that, it was in his hands individually, and not as an officer of the bank.    In support of that he calls attention to Ladner's promise to return it from time to time; the fact that it was taken to Atlantic City as late as the 17th of August, and there presented to Mr. Beckhaus, with a suggestion or request that he would split it up, as the phrase was, divide it into three smaller notes instead, and the omission to make the charges upon the books, and various other items which were rehearsed to you by the counsel, which I cannot at this late hour go over.

On the other hand, on behalf of the plaintiff, you have the positive evidence of the cashier; you have that fortified by the fact that Mr. Ladner, who was the son-in-law of Mr. Beckhaus, who was living on friendly terms with him, it is presumed or

may be fairly inferred, that he would have returned it when Mr. Beckhaus asked him for it and read him a lecture, as he told you, if he had it in his hands at the time; the reason he did not was because, as the plaintiff says, it was in the hands of the bank at that time.

In addition to that, you have the fact that Mr. Ladner would not have been likely to give his father-in-law's note and put his father-in-law in a position of losing his money for an old debt, without he had been expecting something new for which he would have done such a thing, that in point of fact he did give it to the bank on the 3d day of July and got these advances subsequently; [15] and then the admission in the testimony, read by Mr. Johnson towards the close of his speech, of Mr. Ladner himself, that he gave it to Mr. Graham for the bank before the drafts were accepted.

Verdict for the plaintiff. The court subsequently discharged a rule for a new trial and entered judgment for plaintiff.

Defendant took this writ, assigning as error: (1) The ruling of the court on defendant's offer of evidence; (2-10) the answer to points; (11-15) portions of charge in brackets as indicated by exponents.

*Alexander P. Colesberry* and *F. Carroll Brewster,* for plaintiff in error.—To set aside promissory notes on the ground of mental incapacity it is not necessary to prove partial derangement. It is sufficient if there appears such weakness of mind as to incapacitate the party to guard himself against imposition and undue influence. Johnson v. Chadwell, 8 Humph. 145; Beller v. Jones, 22 Ark. 92.

Notes and mortgages executed by a man nearly eighty-five years of age, too enfeebled in body and mind to protect himself from imposition, were held to be invalid, and were set aside. Coleman v. Frazer, 3 Bush, 300.

Mere weakness of mind alone, without imposition or fraud, forms no ground for vacating a contract. But if there is any unfairness in the transaction, then the intellectual imbecility of the party may be taken into the estimate, to show fraud as a ground for annulling the contract. Owings's Case, 1 Bland, Ch. 370, 17 Am. Dec. 311; Dodds v. Wilson, 1 Treadway Const. 448; Somes v. Skinner, 16 Mass. 348.

It is competent for a demandant, in a real action, wherein the tenant claims to hold by force of a conveyance from him, to show that such conveyance was obtained by fraud and imposition and for that purpose to show that he, the demandant, was of feeble understanding, so that he might be defrauded by artifices which would not have prevailed against common men; and that the tenant had acquired an extraordinary influence over him. To prove such influence, transactions before and after, as well as at the time of the conveyance, may be properly admitted in evidence.

Where one of the parties to a contract, at the time of its execution, was laboring under mental weakness, a court of equity will investigate the consideration and determine its sufficiency, and pass upon the party's mental state and condition; and if inadequacy of consideration and mental imbecility concur, although the weakness of the mind does not amount to idiocy or legal incapacity, the contract will be annulled at the instance of the proper party. Cadwallader v. West, 48 Mo. 483; Galpin v. Wilson, 40 Iowa, 90; Kilgore v. Cross, 1 McCrary, 144, 1 Fed. 578.

The third point presented was as follows: "To give plaintiff a right to recover, the jury must find that the bank is a holder for value and without notice of any defense Beckhaus would have as against Ladner." Yet the judge charged, "I affirm this also as regards the defense of fraud." The charge is at war with all the cases. Petrie v. Clark, 11 Serg. & R. 377, 14 Am. Dec. 636; Kirkpatrick v Muirhead, 16 Pa. 117; Hutchinson v. Boggs, 28 Pa. 294; Lenhein v. Wilmarding, 55 Pa. 73; National Bank v. Perry, 2 W. N. C. 485; Royer v. Keystone Nat. Bank, 83 Pa. 248; Cummings v. Boyd, 83 Pa. 372; Ashton's Appeal, 73 Pa. 153; Breneman v. Furniss, 90 Pa. 186, 35 Am. Rep. 651; Maynard v. Sixth Nat. Bank, 98 Pa. 250; Carpenter v. National Bank, 15 W. N. C. 523; Lerch Hardware Co. v. First Nat. Bank, 16 W. N. C. 104; Ligget Spring & Axle Co.'s Appeal, 43 Phila. Legal Int. 331; Schaeffer v. Fowler, 17 W. N. C. 162; Taylor v. McCune, 11 Pa. 460; Kyner v. Shower, 13 Pa. 444; Schollenberger v. Nehf, 28 Pa. 189; and Barto v. Schmeck, 28 Pa. 447, 70 Am. Dec. 145; Eilbert v. Finkbeiner, 68 Pa. 243, 8 Am. Rep. 176; Liszman v. Marx, 6 Sad. Rep. 588.

A party's ignorance of the truth of the representation made

by him will not remove the estoppel, if he was in reason bound to know the facts, or if he wilfully shut his eyes to the facts, or turned away, suspecting that otherwise facts would be disclosed at variance with those represented to exist, or if he made the representation in clear and positive terms, without knowing whether it was true or false, or if his ignorance was the result of gross negligence. Bigelow, Estoppel, p. 530; Pickard v. Sears, 6 Ad. & El. 475; Freeman v. Cooke, 2 Exch. 654; Wills v. Kane, 2 Grant Cas. 60; Chapman v. Chapman, 59 Pa. 214; Cochecho Nat. Bank v. Haskell, 51 N. H. 116; 12 Am. Rep. 67; Ohio & M. R. Co. v. McCarthy, 96 U. S. 258, 24 L. ed. 693; Andrews v. Ætna L. Ins. Co. 18 Hun, 163; Kiern v. Ainsworth, 95 Pa. 310.

*John G. Johnson* and *James W. Paul,* for defendant in error. —The note in controversy was given by Beckhaus for the accommodation of Ladner. Had there been no fraud, the bank could have recovered upon it against Beckhaus, although it had held it merely as security for an antecedent debt. There was no real fight upon the matter of the accommodation, because of the proof of fraud which rendered it necessary to go into the consideration which had been given by the bank. The whole controversy was as to whether the bank had given consideration or not, because it was conceded that, although the note had been given for accommodation, the bank could not hold it as security for an antecedent debt, and was only entitled to hold, if value had been given upon the faith of it subsequently to its deposit.

Many cases are cited by the plaintiff in error which prove that in case of fraud there can be no recovery by one who holds merely as a pledge for an antecedent debt. In this category are Petrie v. Clark, 11 Serg. & R. 377, 14 Am. Dec. 636; Kirkpatrick v. Muirhead, 16 Pa. 117; Hutchinson v. Boggs, 28 Pa. 294; Lenheim v. Wilmarding, 55 Pa. 73; National Bank v. Perry, 2 W. N. C. 485; Royer v. Keystone Nat. Bank, 83 Pa. 248; Cummings v. Boyd, 83 Pa. 372; Breneman v. Furniss, 90 Pa. 186, 35 Am. Rep. 651; Carpenter v. National Bank, 15 W. N. C. 523 and Lerch Hardware Co. v. First Nat. Bank, 16 W. N. C. 104.

In Maynard v. Sixth Nat. Bank, 98 Pa. 250, there was no evidence that the note was an accommodation note. See also

Schaeffer v. Fowler, 17 W. N. C. 162; and Kirkpatrick v. Muirhead, 16 Pa. 117.

We submit that in this case there was no error; that the charge of the trial judge was more favorable to the defendant than was justly his due; and that the instructions to the jury were in accordance with the well-settled law of this state.

PER CURIAM:

Most of the exceptions in this case may be found substantially in the second and third assignments of error, and neither of these can be sustained. It is certainly good law, in this commonwealth, that where one man gives to another an accommodation note, it will be good against the maker in the hands of a third person though passed to him as security for a pre-existing debt. Of course this statement precludes the idea of fraud in the procurement of the note, and so the learned court instructed the jury. So, likewise, even where the note is procured in bad faith, and is passed to a third person for a valuable consideration, he may recover from the maker at least the amount he actually paid or credited the payee on the faith of the paper. These are obvious and well-settled principles of commercial law, and we cannot agree to reverse the court below for a statement of them to the jury. The other assignments need no consideration.

The judgment is affirmed.